And we'll proceed to hear argument in the last case on calendar for this morning, which is 25-273, State of Arizona v. United States Internal Revenue Service. And we will hear first from Mr. Garrett. Good morning, Your Honors. May it please the Court, Clinton Garrett for the State of Arizona. I'm here with my colleague, Katherine Boutin, and I'm going to endeavor to save about two minutes for rebuttal. This Court said in Yellen v. Arizona that there's no reason under normal juristic standards for a court to dispute, deny, or discredit a state's standing allegations at the pleading stage. Yet, in a case where the merits question is whether the IRS subjected Arizona's 2023 tax rebates to unlawful and disparate taxation, the district court found on the pleadings in this case that the IRS applied the same fact-intensive inquiry to Arizona's rebates that it had applied to all the other states that had issued refunds. Let me push back on that a little bit because we all agree that Arizona wasn't treated differently in 2023 or Arizona taxpayers weren't treated differently in 2023 than any other state, correct? Well, I would take issue with the part of the determination relating to whether – Let me be more specific so you don't have to be incredibly lawyerly in your response. In 2022, the IRS decided to treat similar claims as not generating income, correct? That's correct. Taxable income. Arizona was not a state that provided a rebate during that year. That's correct. And the IRS's – I read its determination at the time. I don't think it could have been clearer than it said, look, this isn't a precedent. We're very busy. Don't rely on this in future years. We're just – we're in the middle of a pandemic. We just don't have time to deal with this. And then the next year when it comes up, Arizona is treated the same as the only other state that falls in the category, right? But it was treated unlawfully, especially with – But unlawfully is not the standing issue. See, I'm trying to figure out – your claim of standing is that we were treated differently than other – our state's taxpayers were treated differently than other states' taxpayers. And so I'm trying to figure out whether that claim – so your eventual claim that whether the IRS was right or wrong doesn't give you standing. That's the merits claim. So I'm trying to figure out – it's the disparate treatment that might give you standing. But I don't see any allegation in this case of disparate treatment. It's just they decided in the next year, as the IRS often does, to change a policy. And in this case, they didn't even really have a policy. But I think that we were treated differently with respect to a determination that the IRS didn't even have arguable discretion to treat us differently. Isn't that the merits argument? See, your merits argument is they just got it wrong. This shouldn't have been treated as income. But that's not a standing argument. Your standing argument about injury to the state is that you treated our state differently than other states. Well, but there's both the discrimination and there's also the threat to Arizona's sovereign tax policy. I want to get to that, but that's not – you're talking about – I was focusing for a moment on disparate treatment. I want to get to your sovereignty claim separately. But with respect to disparate treatment, I just don't see that there's an allegation of disparate treatment given that you were treated exactly the same as everybody else in the relevant year. And in the prior year, the IRS made it perfectly clear it wasn't making any legal determination. It was just saying we don't have time to deal with this. But I think the error is imbuing the year with some significance that it just doesn't have legally. The IRS had said we're going to make a set of determinations while the COVID emergency is extant. And we're going to rely on IRC 139B4 and find a presumption that payments made during this period satisfy the general welfare exception. And that might have been one thing. There might have been some reason in that. But to just look at the year and say that the COVID emergency is going to be in effect until May 2023 and so this is only an issue for 2022 just doesn't make sense. But even if you had alleged differential treatment that taxpayers in Arizona operating under Arizona law receiving payments under Arizona law are not, in your view, being treated properly in the intersection between federal law and the relevant state laws vis-a-vis residents of other states. Why is the state of Arizona the proper plaintiff for that kind of a claim as opposed to the taxpayers? Because it poses exactly the kind of threat to sovereign state policy that this court recognized in Arizona versus Yellen. It's very similar. Arizona versus Yellen. There was you know, there were two injuries. One was they might actually have to the state might actually have to pay back money. And the other was a claim of coercion to change the policy. But you don't fall into either of those buckets here. I think we do. I think the coercive effect is exactly the same. Arizona versus Yellen did involve a direct penalty. But whether you're taking the money out of public resources before it's paid or you're taking out after it's paid, a state has a finite pot of money. Say a state has $100, it wants to get the best bang for its buck with $100 it can. And it has all kinds of different policy choices. So is the loss of tax revenue, is that the sovereignty claim? See, I understood your sovereignty claim was you're interfering with our ability to enact sovereign state policy, which in this case was the rebate. Is your sovereignty claim that you lost tax revenue? No, we have a separate. That's a different claim, right? Yes. So focusing only on the sovereignty claim, what was it that the federal policy prevented the state of Arizona from doing that it had the sovereign right to do? It prevented us from returning money for tax to taxpayers. You got to return every penny you wanted to to taxpayers. They may have had to treat that payment. In part, as federal income is taxable, but nobody the IRS didn't do anything that prevented you from mailing the check to taxpayers, did it? It didn't prevent us from mailing a check. But in Arizona versus Yellen, the state wasn't prevented. Well, but it's giving a tax. As Judge Collins points out, that's a very different case. The state was being actually told it had to do something there, had to adopt a policy. The claim there was it was a coercive conditions case. It's like a South Dakota versus Dole case where I'll give you this money, but only on conditions. And that was the claim that that we recognize here. The discrimination claim. I don't understand why your theory wouldn't overrule Florida versus Mellon on its facts, because it was a discrimination claim in Florida versus Mellon. Florida had a particular tax policy and the intersection of federal law, you know, versus Floridians versus people in other states was unfair. And yet the Supreme Court said no standing. So I don't understand why, even if there was disparate treatment between Arizona and others, why you're the correct plaintiffs, because Florida versus Mellon would seem to come out the other way. Well, but Florida versus Yellen involved now uniformly enacted Mellon, an earlier secretary of the treasury. Well, it was it was a uniform law and the theory and the tax loss theory didn't work in that case because Florida and the other states pled only vague allegations that the inheritance tax would cause people to leave the states and that would cause tax loss injury. But Florida versus Yellen recognized that that the rule of liability. But the claim in I mean, because this is back when the Supreme Court reports used to summarize the briefs and it actually has the summary of the argument presented there on page 14. It says the act directly discriminates in its effect against the state of Florida as compared to other states because of the differential intersection of state law and its treatment of the states versus federal law and how that fell out in different states. And the answer was the suit. Nor can the suit be maintained by the state because of any injury to its citizens. They are also citizens of the United States and subject to its laws. And then that you can't assert a parent's patria claim against the federal government, which is essentially what the discrimination claim was. So I don't understand why this discrimination claim isn't at its core a claim on behalf of citizens. And you can't bring that against the federal government. Well, because I think the effect might have been discriminatory because states had different existing laws. But you were dealing with a congressionally enacted law, which is very different than what we have here. When you have administrative decisions every time you may. So that's a merits argument. So if a taxpayer or somebody was standing were to say IRS, you made an arbitrary decision here. I'd understand that because they would they would have standing. But it seems to me that you can't bootstrap the merits argument into a standing argument. But how does Arizona. Your taxpayers are being mistreated. That's your claim. Why are you the plaintiff? Because your taxpayers should be plaintiffs. Your Honor, because Arizona is also being mistreated. If Arizona wanted to issue another tax refund now tomorrow and not cap it, the taxes actually paid the authority that the IRS purported to rely on says that only the excess of that. But you could still you could still issue. You can issue a rebate in any amount that you want. There's nothing the IRS has done to prevent you from doing that. You agree. I don't agree because I think it creates exactly the same kind of. There may be a disincentive to doing it, but there's no legal barrier. Is there to Arizona enacting whatever rebate policy it wants? No. And there was no legal barrier in Arizona versus Yellen. Arizona would just pay a penalty if it pursued a certain. I want to give you time to get what I thought was going to be your lead argument, which is that there's an effect on state tax revenues from from this IRS policy. And that's what gives the state standing. So since you only have a few minutes left, could you address that argument? Sure. Yes. We also have the tax loss basis for standing. And I think that the lesson in the authority on tax law standing is that specific allegations of tax law standing that have economic logic behind them confer standing and more generalized allegations. Allegations that lack economic logic do not confer standing. And I think that our allegations in this case supported by declarations prepared by an economist at the Arizona Department of Revenue very much fall on the side of the line where specific tax loss is credited. And, of course, standing does not mean you have a case on the merits. We see in New York and New York. I must say, if we were if we were looking at this case on the merits, I'd have real problems with your case. Yeah. And in New York versus Yellen, the second the district court and then the Second Circuit found that New York and the other states had tax law standing. So that's that's what they lost. Yeah. The bad news is you're just you're challenging a uniform law. Tax loss is a lot more indirect than in Wyoming versus Oklahoma. I don't think it is because I and I think the focus can't be on the scope of the harm. I mean, imagine if the IRS did something even more egregious and said, Arizona, your tax refunds are going to be taxed at 80 percent or go a step further and say that are the IRS at Arizona. Everybody who lives in your state is now going to pay a tax of 80 percent. I would say that there's there's no question that that would support both tax loss injury because you would be taking money out of the state and it would also support sovereign injury because it would be particularly if you're looking at the higher tax on the tax refund. It would create a strong disincentive to a state pursuing its favored tax policy. Pushing. Standing aside for just a moment, is it the state's contention that this is not income? To the extent it doesn't, the refunds don't exceed taxes paid, it's not income. And that's where the IRS went far astray and just it just mischaracterized established law in treating the entirety of these refunds as taxable income. And the IRS mischaracterized the Maine's case in its August 2023 notice. It continued to mischaracterize it. And Judge Snow said to the IRS that your explanation doesn't meet Maine's at all. Maine's very plainly says that if you refund tax money, that only the excess is taxable. So if somebody has paid five hundred dollars in taxes and gets a five hundred and ten dollar refund absent an exclusion, that ten dollars might be taxable. But the five hundred dollars is non-taxable. And then that's a principle that goes back to the Glenshaw Glass. It's just it's not an accession to wealth. And the IRS mischaracterized that throughout. And now in this court is saying, well, we think it's a sensible test to just tax the entire amount. And that's why I say it's not a matter of discretion. It would vary from taxpayer to taxpayer. It does. But as a state, Arizona is unable to issue tax refunds without that unlawful penalty on the money it's distributed. We've taken you over time, but we asked a lot of questions. I'll give you the two minutes you requested for rebuttal. All right. So we'll hear now from Mr. Sheehan. Good morning. May it please the court. I'm Anthony Sheehan. I represent the United States of America. The court is focused today on standing, which is the same basis on which the district court dismissed this case. Arizona alleged three injuries that it claims gives it standing. It is the position of the United States that none of those injuries would give it standing. First of all, Arizona says they suffered an injury and a loss of tax revenue. But the injury, an indirect or incidental loss of tax revenue can never give standing. This court is very. Is your position on that consistent with the Second Circuit decision, which would seem to. It may have been more direct, but it seemed to treat a loss of state tax revenue as giving rise to sufficient injury to confer standing. The Second Circuit case is definitely distinguishable from this case. First of all, in this case would be following this court's precedent in the Washington case. In the Second Circuit's case, first of all, there were allegations. It was in the backdrop of against allegations that the SALT limitations were there to incentivize or coerce states to alter tax policy. Secondly, in this case, in the complaint, you had a conclusory allegation that our Department of Revenue estimates four hundred and eighty thousand dollars. In the New York v. Yellen case, the complaint attached to it in support multiple declarations of experts that spanned, according to the opinion, pages 69 through 180 of the appendix. So while we disagree with the Yellen case, we think it was wrongly decided. We think this court should follow its own precedent. And in the Washington case, that these incidental effects do not confer standing. In any event, the Second Circuit case is distinguishable from this one in that regard. Also distinguished will be Wyoming v. Oklahoma, where there was undisputed evidence of a direct impact on Wyoming's revenue from Oklahoma's tax. Well, I'm sorry. It may not be undisputed here, but it sort of strikes me as inherently obvious that while the expert report may be questionable in a number of respects, Arizona must have at least lost some transaction tax revenue because these dollars were not were not available to the Arizona citizens to spend. It just makes perfect sense to think that even if it's only one transaction, there surely would have been a transaction in which the money was spent on a sales tax event in Arizona. So if that's the case, are we just arguing about the amount as opposed to the directness? No, we're not just arguing about the amount. And that exposes the problem with Arizona's economic logic argument and their de minimis argument. We have a very diverse country. We have a very much interconnected economy. Federal policies and decisions are going to have the consequence of impacting states, impacting state revenues. There's virtually nothing the federal government can do that's not going to have a negative fiscal effect on a particular state, which is why this court said, you know, in Idaho, in the Washington case, it's entirely plausible that there might be extra emergency room visits that might have to be state paid, which is why these indirect incidental derivative effects on state revenue simply as a matter of law do not confer state standing. Otherwise, as this court said, I think echoing the Sixth Circuit, it would make a mockery of Article 3. Indeed, another example would be if the federal government fired a federal employee for cause, it is entirely economically logical that the state might lose some dollars of state revenue because of that firing, because of the reduction of that person's income. But that does not necessarily mean that the state can then sue the federal government on the person's behalf to have that person reinstated. This is a matter between the Arizona taxpayers and the federal government. And at the state of Arizona, it really has no standing to insert itself into it. The second basis was the argument of disparate treatment. So I'm going to ask you the same question I asked to pose here. The briefs really focus on whether there was disparate treatment, but. Do you concede that if there was disparate treatment, then of Arizona taxpayers versus taxpayers and others state that Arizona does have standing? I would say no, your honor. We're talking about two different sovereigns here. In that Arizona has its taxing power and the federal government has its taxing power, and the relationship would be between the Arizona taxpayer and the federal government. And the Arizona taxpayers. So suppose the IRS. You know, we had a neutral federal statute and the IRS issued guidance that said, you know, we're going to construe this one way in this collection of states and another way in another collection of states, just naked on its face. Discriminatory policy in terms of the application of a of a facially neutral federal statute. Can the states whose citizens are the target of that? Do they have standing to bring suit to challenge that? Interesting hypothetical. That's this case. So, yeah, OK. Well, again, your honor, we did brief this. We did brief this as there was no disparate treatment. But I want to know whether apart from the issue of whether it is disparate treatment, there is a further standing issue. And so the answer is either yes or no. And that's why I asked the tough hypothetical. If you had that kind of a stark treatment, would Arizona be a proper plaintiff? Yes or no? And the cases I've read on it, there was a good chance Arizona could be a proper plaintiff if it was that stark and that disparate. And what case would support that standing that you've read? It would be in our brief. In the discussion of quasi sovereign interests, I do not have a case off the top of my head. Your honor, I'm sorry. I guess, you know, quasi sovereign interests is usually things that get asserted for parents. Patria standing. But you can't do that against the federal government. Right. That is correct. But it's in the same portion of the brief. It would have to be a matter of I'm trying to. Trying to track that down for you right now. But it would have to be the state could possibly argue if there was something as stark, as dramatic as your honor stated. Could the state could say that it was not being treated equally to other states on something that is that stark on its face? But that is not the case we have here. Well, then it seems to me your your argument does rely on disparate treatment. The absence of disparate treatment. The. The way it was your response to Judge Collins is, well, if they'd really alleged that the state was treated disparately, they might have a claim. So in twenty twenty two, for example, if the IRS had said we're not going to treat any of this as income except for Arizona because we don't like them, the Arizona would have standing to make that claim, would it not? If it was something that was that disparate, of course, as the district court correctly pointed out that these determinations, if when they are made now that the IRS did not make a determination on these programs for twenty twenty two, as the court has recognized it was a forbearance because of the pandemic, you can have on these different state programs, a different determination back based on facts and circumstances with it. And that wasn't that wasn't just Collins's hypothetical or mine. I guess I'm just trying to point out your argument seems to be to necessarily rely on the absence of disparate treatment. Because if there had been disparate treatment, at least there would be. Some necessity to explain it, would there not? If there had been disparate treatment as stark as Judge Collins has hypotheticated of, there was a plain federal statute and we're just not going to apply it to Arizona because we don't like them. Thank you for that, your honor. I see my time is running out. Oh, no, you said you still have five and a half minutes, right? I think maybe the case you were thinking of before. I mean, the Alfred Stapp case refers to a quasi sovereign interest in not being discriminatorily denied its rightful status within the federal system. Is that what you were referring to? But again, your honor, but can you can the state assert quasi sovereign interests against the federal government or does it have to be sovereign interests or some other concrete interests like loss of tax revenue? A state cannot. This is precedent, your honor. A state cannot assert quasi sovereign interest. It would have to be a sovereign interest. And. Probably I would say that. The. Certainly, Arizona state taxpayers could come in and say, you're not applying this, this, this law to us fairly because. They are the ones who have the relationship with the federal government, the federal taxing authority with regard to federal taxes. If I may, moving on to. So why don't you why don't you tell us why you think there wasn't a discriminatory impact? Two reasons. First of all, we'll start with the Maine's case. The IRS's policy in IRS's reading of Maine's is that if you're going to if the state is going to issue a payment, remember Maine's deals with tax credits, which are shown on returns. If you're if a state is going to issue a payment to its residents, it has to be capped. If it's not capped, it is not treated as a refund. Now, Arizona can disagree with that. And Arizona taxpayers can disagree with that. But that goes to the merits. In terms of standing, four states capped their payments. They were treated as having issued refunds. Arizona didn't cap. It was not. There is no disparate treatment. That policy was applied uniformly to everybody. We go to the other 17 states. And as the court has already recognized, the press release issued in February 2023 dealing with tax year 2022. Now, every tax year is a new liability and a new cause of action. It said we just cannot deal with these. It did not make a determination on the merits that has been consistent throughout. It is shown in the language of that news release. It is shown in the letters that the IRS sent to Arizona before this case even started. It was a one time limited to 2022 forbearance of enforcement because of the necessities of tax administration. If Arizona had issued its payment in 2022, there's no reason to believe it would not have been the 18th state in that group. On the other hand, in 2023 for tax year 2023, which is when this was issued, the only other state to issue a payment was Minnesota. The IRS at that point in the calmer environment analyzed it on the merits. And Minnesota's payments were also not treated were also considered taxable. So this is dealing with. With a one time forbearance, it did not create precedent. It did not create a right. Arizona is not being treated differently based on the circumstances. The third argument they make is that they had a sovereign injury to their taxing power and their spending power. That is simply not the case. Arizona can still tax as it wants. It can still spend as it wants. It can still issue whatever payments it wants. Really, what it's arguing is that. Essentially, it can issue whatever money it wants from its fiscal aquifer. It's just saying that not enough money percolated back down into the aquifer. But that goes right back to the first argument, the loss of tax revenue. That it would never give in the loss of tax revenue, this indirect derivative. Tangential loss of revenue could never give a state standing because if it did, the states would always have standing. And as this court has said in Washington, it would make a mockery of Article three. And if there are no further questions, I would rest on the brief for the rest of our arguments and ask the court to affirm. All right. Thank you, counsel. We'll hear rebuttal. Your Honor's Mr. Sheehan conceded that, well, maybe if the alleged discrimination was more dramatic or more stark than Arizona probably would have standing. We don't we don't have any discovery in this case. We don't have the administrative record. So maybe we'll find that it is pretty dramatic. We have no idea. I think he did that in response to our hypothetical questions about discrimination. His first point was there was no discrimination at all. Could you respond to that? Again, that's just wrong. And I would again urge the court to take a look at the Maine's case. The point is that, yes, you have a just you have a genuine dispute about how to read Maine's. They've read it one way. It has to be cap, no cap, disallowed. And that's the rule they applied for landed one way. You landed on the other side. How is that discrimination? It may be wrong to do it, but it's adopting a position and applying it equally. I would take a position may be wrong, but it's equally applied. I would take issue with that because four of the 21 states were told that that their tax rebates wouldn't be taxed under Maine's unless the taxpayers had deducted state taxes and received a federal government, a federal deduction conferring a benefit for their tax payments. So those states, those four states received the lawful application of Maine's and then Arizona did not receive the lawful application of Maine's. And that just seems to me to be pretty stark discrimination. I think in your view that every time the IRS is wrong in its application of where it draws a dividing line, there's unlawful discrimination. Well, it depends on the nature of how the IRS gets it wrong, I think. We've alleged that the IRS discriminated against Arizona in significant detail. We showed how the other states received favorable treatment when their rebates were structured in a way materially identical to Arizona's. And then that leaves the IRS with these arguments about the significance of the tax year and about conferring forbearance and what the heart of the emergency was. And I'm not sure how any of that is relevant when Arizona issued its refund within the COVID emergency, just like all the other states did. At a minimum, I think we have arguments and issues of fact to be resolved with this case going forward. All right. Thank you, counsel. The case, we'll thank counsel on both sides for their helpful arguments in this case. And the case just argued will be submitted and the court for this session for this day will stand in recess. Thank you. Thank you.
judges: HAWKINS, HURWITZ, COLLINS